### WILLIAM B. MITCHELL ET AL. V. MARGARET J. MITCHELL.

#### No. 3215.

1. **Control of Orders During Term at which Made.**—A court has control of its judgments until the end of the term at which they are rendered; and when a judgment has been rendered and afterward set aside at the same term the cause stands precisely as if the judgment had never been rendered. This rule applied where on dismissing suit as to a husband the wife pleaded nonjoinder of her husband, the order of dismissal was set aside, and her plea of coverture overruled. No error was committed by the court in setting aside the order of dismissal and permitting pleadings to be filed making the husband a party defendant.

2. **Assignments of Error.**— See assignments of error disregarded because too general in their terms.

3. **Separate Property of Wife.**—If the land in controversy was either paid for by the separate means of the wife, or was purchased for her by her husband for the purpose of discharging a debt which he owed her, it became her separate property.

4. **Same.**—Evidence reasonably satisfactory to the jury is sufficient to overcome the presumption carried by a deed for land executed to the husband during coverture that the land was community property.

APPEAL from Galveston. Tried below before Hon. WM. H. STEWART. No statement is necessary.

*Thomas M. Joseph* and *Scott, Levi & Smith,* for appellants, cited Rev. Stats., arts. 2852, 2853; Pearce v. Jackson, 61 Texas, 645; Epperson v. Jones, 65 Texas, 427, 428; Smith v. Bailey, 66 Texas, 554; Barziza v. Graves, 25 Texas, 323; Kirk v. Nav. Co., 49 Texas, 213; Ross v. Kornrumpf, 64 Texas, 390; Cooke v. Bremond, 27 Texas, 457; Veramendi v. Hutchins, 48 Texas, 531; French v. Strumberg, 52 Texas, 92; McKamey v. Thorp, 61 Texas, 648; McDaniel v. Weiss, 53 Texas, 257; Wallace v. Campbell, 54 Texas, 87; Parker v. Coop, 60 Texas, 111.

*Stubbs & Stubbs,* for appellee, cited Childs v. Mays, 73 Texas, 76; Poole v. Mueller Bros., 80 Texas, 189; Cotton v. Lyter & Co., 81 Texas, 10; Blackburn v. Knight, 81 Texas, 326; Mayer v. Walker, 82 Texas, 222; Blum v. Wettermark, 58 Texas, 127; Saylor v. Marx, 56 Texas, 90; Hooker v. Williamson, 60 Texas, 524; Bryorly v. Clark, 48 Texas, 345; Wood v. Wheeler, 7 Texas, 13; Thompson v. Griffin, 69 Texas, 139; Evans v. Welborn, 74 Texas, 530; Stoker v. Bailey, 62 Texas, 300; Mc-

Karney v. Thorp, 61 Texas, 650; Ullman v. Jasper, 70 Texas, 446; Batte v. Beck, 70 Texas, 754; McAfee v. Robertson, 43 Texas, 591; Smith v. Strahan, 16 Texas, 325; Dunham v. Chatham, 21 Texas, 231; Higgins v. Johnson, 20 Texas, 389; Leakey v. Gunter, 25 Texas, 403; Heberd v. Wines, 105 Ind., 237; Moore v. Jones, 63 Cal., 15; Burkes v. Burkes, 7 Bax., 353; Houghton v. Davenport, 74 Me., 590.

Appellee submits the following independent propositions:

1. It is clearly shown that J. S. Mitchell received over $20,000 of the separate estate of his wife.

2. That he asked and obtained her consent to invest her means in real estate in Galveston for her benefit, and did so invest them.

3. That he undertook to withdraw her capital from the business by setting aside various sums from time to time and buying lots therewith and completing the payments thereon, all of which he declared he did to invest her money safely for her benefit, and as a means of returning it to her.

4. The fact that he took the deeds in his own name can not defeat the trust or render nugatory his purpose, assented to by his wife, of making the purchases for her and in repayment for her funds had and used by him.

5. The community earnings were more than exhausted by the community expenses, and in fact the Galveston property was mortgaged to pay debts and improve land in Minnesota. Mitchell recognized these facts, and from the first sought to set aside and preserve for her the corpus of his wife's separate estate. His will seeking to leave the Galveston property to her, upon condition of her surrender to his relatives of all claim to the St. Cloud place, clearly indicates his conviction of her right to the Galveston lots, and is consistent with his action in his lifetime.

GARRETT, PRESIDING JUDGE, *Section B.*—This suit was brought by the appellee Margaret J. Mitchell, as plaintiff, against Elizabeth A. Mitchell and others, for the recovery of certain lots in the city of Galveston. Plaintiff claimed the property in controversy in her separate right; and the defense was, that it belonged to the community estate of the plaintiff and her deceased husband J. S. Mitchell, who left a will devising the same to the plaintiff on condition that she should accept it in lieu of all the rights she would have in his estate by the laws of Minnesota, where he died.

Trial was had, and judgment was rendered in favor of the plaintiff, upon the verdict of a jury that the lots were the separate property of Mrs. Mitchell.

This is the second appeal in this case. The first will be found reported in 80 Texas, 101. Elizabeth A. Mitchell alone has prosecuted this appeal.

When the case was called for trial, April 22, 1891, the plaintiff dismissed her suit against the defendants H. Z. Mitchell, Laura B. Mitchell, Mary C. Burbank and her husband H. C. Burbank, and Jennie G. Walton and her husband C. Walton, and the suit was discontinued and dismissed as to said defendants; and the plaintiff thereupon obtained leave to file and did file her third amended original petition against the defendants William B. Mitchell, Charles S. Mitchell, Elizabeth A. Mitchell, and William R. Johnson, and none others. And thereupon under leave of the court the defendant Elizabeth A. Mitchell filed a plea of coverture and abatement for the nonjoinder of her husband, the said H. Z. Mitchell, with her in this cause; and the same having been presented to the court, upon motion and at the request of the plaintiff the court entered an order vacating and setting aside the order previously made dismissing the suit as to the said H. Z. Mitchell, and the plaintiff with leave of the court filed her fourth amended original petition in lieu of the third, in which the name of the defendant H. Z. Mitchell had been omitted, and again made the said H. Z. Mitchell a party defendant. The defendant Elizabeth A. Mitchell objected to the order setting aside the former order of dismissal and discontinuance as to the said H. Z. Mitchell, and excepted thereto, "because after being dismissed from the suit and having the suit discontinued as to him, and the filing of said third amended original petition, all at the instance and by the voluntary act of the plaintiff, the defendant H. Z. Mitchell was no longer a party to the suit nor subject to nor within the jurisdiction of the court, nor was it competent for the court to recover or assert jurisdiction over the said defendant H. Z. Mitchell, unless by pleading and process de novo to that end, and the defendant Elizabeth A. Mitchell could not be required by law to proceed in the cause, or to defend therein, except in conjunction with her said husband H. Z. Mitchell, nor until he should, by pleading and process de novo, again be brought before and within the jurisdiction of the court."

It is a familiar rule of law, that a court has control of its judgments until the end of the term at which they are rendered; and when a judgment has been entered and afterward set aside at the same term, the cause stands precisely as if the judgment had never been entered. The distinction sought to be made by the appellant between the proceeding in this case and those in which it has been uniformly held that a party is bound to take notice of orders affecting judgments previously rendered at the same term, extending even to nonsuits taken by the plaintiff, is that the latter are involuntary judgments, while in this case the plaintiff voluntarily dismissed her suit against the defendant H. Z. Mitchell and abandoned her cause of action against him by filing an amended petition in which his name was omitted. It would seem that this was inadvertently done by the plaintiff while dismissing as to other defendants. Plaintiff obtained a formal order of discontinuance or

dismissal as to several of the defendants, including the defendant H. Z. Mitchell, and thereupon with leave of the court filed her third amended original petition, omitting the names of said defendants therefrom. This was done on April 22, 1891, when the case was called for trial. Elizabeth A. Mitchell then filed her plea of coverture and abatement and presented the same to the court; whereupon the court, upon the motion and at the request of the plaintiff, set aside its order dismissing and discontinuing as to H. Z. Mitchell and permitted plaintiff to file her fourth amended original petition, again making H. Z. Mitchell a party defendant. All this occurred on the same day and after the case had been called for hearing. Although the plaintiff voluntarily dismissed her suit as to appellant's husband and reformed her pleadings so as to discontinue the same as to him, yet the proceedings by which it was reinstated show no possible injury could have resulted to the appellant. If injury had resulted, it should have been brought to the attention of the court. Bryorly v. Clark, 48 Texas, 355. Under the facts of this case, no injury having been shown, we conclude there was no error in the action of the court in setting aside the order of dismissal as to H. Z. Mitchell and permitting the pleading to be filed again making him a defendant; nor did any injury result from the overruling of appellant's plea of coverture and abatement without hearing evidence. Childs v. Mays, 73 Texas, 76; Poole v. Mueller Bros., 80 Texas, 189; Blackburn v. Knight, 81 Texas, 326; Blum v. Wettermark, 58 Texas, 127. The filing of the fourth amended original petition and the setting aside of the order of dismissal reinstated the cause of action as to the defendant H. Z. Mitchell.

Appellants fifth assignment of error is: "The court erred in its rulings upon the admissibility of evidence, notwithstanding the exception thereto taken by this defendant as shown by the statement of facts."

This assignment is too general, and will not therefore be noticed.

The same objection also obtains to the sixth assignment of error, which is: "The court erred in refusing to give the charges to the jury requested by this defendant." Blake v. Ins. Co., 67 Texas, 160; Hughes v. Railway, Id., 595; Blackwell v. Hunnicutt, 69 Texas, 277.

Three several charges were requested by counsel for appellant, all of which were refused by the court, and the assignment does not point out the error with sufficient certainty.

The eighth assignment of error is as follows: "The verdict of the jury is not warranted nor supported by the evidence, but is against the evidence and a preponderance thereof in the respects following, to-wit:

"1. The claim of the plaintiff to the property in controversy was not proved, but the evidence was clearly to the contrary, in that it was

shown that plaintiff never had funds sufficient to pay the purchase price of said property, and that whatever funds plaintiff may have owned in her separate right were used by J. S. Mitchell for account of himself and the community interests of himself and plaintiff long before the purchase of any of the property sued for, and were never thereafter separated from the community estate or set apart for the separate account and benefit of plaintiff, nor as and for her separate property; and the property here in controversy and every part thereof was purchased by J. S. Mitchell with community funds of himself and plaintiff, in which the separate funds of plaintiff, if any she had, had lost their identity and were commingled with the community funds and with matters of account between the community and separate affairs of plaintiff so as to be incapable of identification with the funds used in the purchase of the property sued for; and because this is true in respect of each and every item of the property sued for.

"2.   The plaintiff's claim to the property sued for as having been purchased by J. S. Mitchell, with the intent and purpose by the act of purchase to refund and pay to the plaintiff his indebtedness and that of the community of himself and plaintiff on account of her separate property used and appropriated by J. S. Mitchell for account of himself and the community, was not sufficiently proved, but on the contrary the evidence and the preponderance thereof clearly shows that the property sued for was purchased by J. S. Mitchell with community funds and on credit of himself as a member of the community, and that the credit payments were discharged from the community estate, and that such purchases were made for account of the community and not for the separate estate of plaintiff, and that plaintiff had no sufficient claims in her own right against J. S. Mitchell or the community to justify the assumption that the investments so made were necessary or proper to reimburse plaintiff for her funds so used and appropriated, and the law and its policy ought to and does outweigh loose, general, careless, evasive, and informal expressions claimed to have been made by J. S. Mitchell in his lifetime, and claimed to show that he purchased the property with intent and purpose thereby to repay plaintiff what he or the community owed her; and this is true in respect of each and every item of the property sued for."

We do not think that it is necessary to state the evidence adduced at the trial in the court below.   If the land in controversy was either paid for by the separate means of Mrs. Mitchell or was purchased for her by her husband for the purpose of discharging a debt which he owed her, it became her separate property.   Mitchell v. Mitchell, 80 Texas, 101.   Evidence reasonably satisfactory to the jury was sufficient to overcome the presumption carried by the deed, that the lots were community property.   There was evidence to show that J. S.

Mitchell received of the separate property of his wife more than sufficient to cover the amount invested in the property in controversy, and that no funds but the plaintiff's were invested in the business of J. S. Mitchell & Co., which was conducted by J. S. Mitchell alone, he having no partner.   It was shown that at the time of the marriage Mitchell owned no property except some lots in Minnesota, which he owned at the time of his death.   Mrs. Mitchell testified, that subsequent to her marriage she had of her original capital left in her possession something over $2000, which was invested in three pieces of real estate bought in 1881.   Two lots purchased for $1500 were sold for $4500, and the profit was reinvested in real estate.   Deeds were introduced in evidence showing the purchase of a number of lots in 1881, payments made partly in cash and partly on time.   Mrs. Mitchell does not clearly trace any particular sums of her separate money into particular lots; but it appears reasonably satisfactory that her money was invested in these lots bought in 1881, if her testimony is to be believed, and this has been determined by the jury in her favor.   There is also much testimony to show that the property was purchased for the purpose of investing Mrs. Mitchell's money in real estate for her benefit, and to repay to her the money used by her husband in the business of J. S. Mitchell & Co.

We are of the opinion that there is sufficient evidence to support the verdict of the jury, and that the judgment of the court below should be affirmed.

*Affirmed.*

Adopted April 12, 1892.