**FRAZIER JELKE & CO. v. CHAPMAN
MINERALS CORPORATION.**

**No. 11131.**

Court of Civil Appeals of Texas.   Galveston.

March 27, 1941.

Rehearing Denied April 17, 1941.

1102

Sears, Blades, Moore & Kennerly and Fred W. Moore, all of Houston, for appellant.

Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 80th District Court of Harris County, entered solely upon a jury's verdict in response to special issues submitted—the court itself not having made any additional findings from the evidence—discharging the garnishee, the appellee here, upon its answer in such garnishment, and taxing a $2500.00 attorney's fee in its favor against the appellant.

Appellant is a partnership composed of Frazier Jelke, Alexander M. Main, J. Hallam Boyd, John J. Moore, Charles L. Stacy, and F. Bartholomay Jelke, doing business under the firm name of Frazier Jelke & Company, while the appellee is a private corporation, with its principal office in Houston, Harris County, Texas; the writ of garnishment, pursuant to Title 68, art. 4076 et seq., Vernon's Texas Civil Statutes, had been issued on a $67,463.38 judgment theretofore rendered in cause No. 251,806 in the 61st District Court of Harris County, in favor of the appellant here, Frazier Jelke & Company, against O. R. Seagraves. In so suing out the writ of garnishment in this cause on its cited judgment against Seagraves, the appellant made the statutory allegations against the appellee herein, with the objective of requiring it to answer these three things:

(1) Was the garnishee indebted to O. R. Seagraves?

(2) Did it have effects in its hands belonging to Seagraves?

(3) Did O. R. Seagraves own any stock in the appellee corporation?

The garnishee having answered all of the questions propounded to it under the writ in the negative, appellant duly controverted that answer, and a jury trial of the issues thereby joined was had, as indicated supra, the jury's findings in material substance having been these:

1. That Chapman Minerals Corporation was not indebted to O. R. Seagraves at the time the writ of garnishment was served, or at the time of the answer.

2. That O. R. Seagraves was not the owner of any shares of stock in Chapman Minerals Corporation at the time the writ of garnishment was served, or the answer made.

3. That Chapman Minerals Corporation was not organized as a mere tool of O. R. Seagraves, with a fraudulent intent of hindering his creditors.

4. That O. R. Seagraves was, on May 8, 1936, when the Chapman Minerals Corporation was organized, insolvent.

5. That Chapman Minerals Corporation, at the time the writ of garnishment was served upon it, was not holding one-half interest in the Morgan-Clark leases for the benefit of O. R. Seagraves.

6. That the 500 shares of stock of the Chapman Minerals Corporation, issued to Mrs. Florence Seagraves (wife of O. R. Seagraves) was not community property at the time the writ of garnishment was served.

7. That the stock issued to Florence E. Seagraves by Floboots Corporation was a

gift from her daughter, Marguerite Seagraves Davis.

8. That the stock issued to Florence E. Seagraves by the Barnsdall Oil Company was issued to her in exchange of stock held by her in the Greta Oil Corporation.

9. That the $217,429.75 recorded on the books of W. W. Chapman, Trustee, to be due Florence E. Seagraves, was due her on account of sale of stock issued to her by the Barnsdall Company.

10. That the $217,429.75 recorded on the books of W. W. Chapman, Trustee, as indebtedness payable to Florence E. Seagraves, was her separate property.

11. That W. F. Morgan gave Florence E. Seagraves royalties in the Refugio area in the year 1937.

12. That Florence E. Seagraves used $3,000 of the proceeds of the royalty so given her by Morgan, to purchase royalties in East Texas conveyed to her by instruments dated April 9, 1931.

13. That Floboots. Corporation paid to Florence E. Seagraves, as the proceeds of such royalty in the East Texas area, a sum in excess of $8,000.

14. That the 500 shares of capital stock —issued by the Chapman Minerals Corporation to Florence E. Seagraves—was paid for by her with the proceeds of the East Texas royalties.

15. That this 500 shares of capital stock of Chapman Minerals Corporation, issued to Florence E. Seagraves, evidenced by certificate No. 1, was her separate property.

16. That the 500 shares of capital stock, for which Chapman Minerals Corporation issued certificate No. 2 to Marguerite Davis, was her property.

17. That the $203,985.90 recorded on the books of W. W. Chapman, Trustee, as payable to Mrs. Marguerite Seagraves Davis, belonged to her

Inveighing on appeal against the judgment so adverse to it below, the appellant thus in its brief summarizes what it conceives to be the controlling issues presented to this court:

"I. There is no evidence to support the jury's finding, that Chapman Minerals Corporation was not indebted to O. R. Seagraves at the time the writ was served upon garnishee, and at the time it answered.

"II. Garnishee asserted in its answer that Mrs. Seagraves (wife of O. R. Seagraves) acquired her 500-share block of its stock with the sum of $6,000.00 paid her by Floboots Corporation, on account of her allowing Floboots Corporation to use the proceeds of a royalty, or part thereof, given her by William F. Morgan.

"III. There is no issue as to the fact of the payment of the $40,000.00-proceeds from the sale of O. R. Seagraves' homestead in Kerr County, Texas, into Chapman Minerals Corporation in June, 1937, at which time Seagraves was insolvent, in the sense that he was unable to meet his obligations as they matured. That insolvency continued, there being no evidence of a change in his financial condition. In the absence of further evidence, it will be presumed that his insolvent condition did not change, even though his specific funds or obligations levied upon by appellant's garnishment were sufficient to pay appellant's debt.

"It is in evidence that the Morgan-Clark Lease in Nueces County, Texas, was paid for by Chapman, Trustee. At that time Chapman had in his account as Trustee $40,000.00 from the Seagraves homestead, and $53,050.00 cash secured from undisclosed sources, except one item of $750.00 which was a repayment from William F. Morgan.

"Since this $40,000.00 was intermingled with and placed in the fund, at that time in Chapman's possession, of $93,050.00, there being no method of disassociating same from the other moneys, said fund of $93,050.00 was charged to the trust in favor of Seagraves' creditors, including appellants, he being insolvent at that time. Said properties constitute part of the community estate held by Chapman Minerals Corporation.

"IV. The evidence as to whether or not the garnishee, Chapman Minerals Corporation, was a mere instrumentality, cloak, device, or blind, through which Seagraves was operating, showed conclusively that it was a mere alter ego or instrumentality of O. R. Seagraves, and did not carry on its operations as an oil company, but on the contrary, was operated merely as a cache or fund for the benefit of the Seagraves family. Consequently, appellants were entitled to judgment against said corporation as a matter of law."

These four generic issues, as so in substance quoted from the appellant's brief, are by it further developed into an enlarged number of species, through twenty proposi-

tions of law; these will be here disposed of by grouping such of them as seem to deal with like, or at least properly groupable, subsidiary contentions.

Preliminarily, it may be noted that appellant's only attack upon any of the given findings of the jury is that there was no evidence to support them—not that any one was so against the overwhelming weight of the evidence as to be clearly wrong, thereby invoking the power of this court to set it aside; so that, the only question it raises concerning the sufficiency of the evidence to support any part of the verdict is one of law only, arising from its assertion that all the findings attacked were without any evidence to support them. That being so, this court has carefully examined the statement of facts as to each detailed attack so made upon the verdict, with the conclusion that it cannot agree with the appellant that any one of them is so wholly lacking in support; to the contrary, it finds from an extensive review of the statement of facts that each finding of the jury—epitomized supra—had behind it not only enough evidence to make of it a question of fact, but also to support the findings made thereon. So much for the jury's findings in toto, when considered as properly being those of fact.

The detailed propositions will now be reviewed seriatim.

The first one in substance asserts, rather flatly, that the moneys, royalties, and shares of stock shown to have been issued or delivered to Mrs. Florence Seagraves (wife of O. R. Seagraves), together with all the rights, titles, and interest held for her in the name of W. W. Chapman, Trustee, were community properties of herself and husband, O. R. Seagraves, since all were shown to have been acquired after their marriage. This is a non sequitur, when applied to the unchallenged applicable findings of fact by the jury, as already given on this specific subject; that is, all moneys, royalties, and shares of stock that were here involved, were found to be her separate property, "because the stock was paid for by her separate property and the indebtedness was due her on account of the sale of her separate property"; the principal items of these were the 500 shares of stock she held in the appellee corporation, together with the $217,429.75 that concern owed her.

In such circumstances, by the well settled law of this state, neither of those items constituted community property between herself and husband, but both originated as and continued to be her separate property; Mitchell v. Mitchell, 84 Tex. 303, 19 S.W. 477.

The second one, challenging the admission of the witness Bissonnet's testimony that certain books kept by the Trustee, W. W. Chapman, showed that O. R. Seagraves did not owe the Trustee any indebtedness, and that—considering the records he himself had made—the money due from appellee corporation to Mrs. Seagraves represented left-over proceeds of the sale by her of her Barnsdall Oil Company stock, is abortive as to both features of that testimony, for these reasons: (a) There was no objection made at the trial to what such books showed; (b) the statement as to the left-over proceeds of the Barnsdall stock sale was neither challenged in appellant's motion for a new trial below, nor did appellant except there to the overruling of its objection; (c) Bissonnet was shown to have had personal knowledge, from his long experience with those transactions, of the facts he was testifying about and had already, without objection, given the same testimony as to the origin of the appellee corporation's debt to Mrs. Seagraves, as having been bought with proceeds from her Barnsdall stock. Stillman v. Hirsch, 128 Tex. 359, 99 S.W.2d 270; Barrera v. Duval County Ranch Co., Tex. Civ.App., 135 S.W.2d 518; Sunshine Oil Corporation v. Dooley, Tex.Civ.App., 238 S.W. 357; 2 Jones on Evidence, p. 1423.

The third group of the detailed propositions complain of the trial court's having submitted, over appellant's objection, its special issues Nos. 18 and 19, inquiring whether the $217,429.75 indebtedness of Chapman, Trustee, to Mrs. Seagraves was due her, as her separate property, on account of her sale of Barnsdall Oil Company stock, because the evidence did not support such assumption, it being mere conclusions of the witness Bissonnet, recitations from the books of Chapman, Trustee, which were not in evidence, the special issues further assuming that such books did show such an indebtedness, when they were not in evidence, and the evidence otherwise showing that the Barnsdall stock-certificates had never been delivered to Mrs. Seagraves, but to her husband personally; and finally, that issue 18 submitted a question of law only, in that the property here involved was "profits from the investment of

moneys, or a speculation", hence could not be treated as Mrs. Seagraves' separate property, as special issue No. 19 assumed it to be.

These presentments seem inept, in still contesting the conclusive showing from the evidence as a whole that, according to the books of Chapman, Trustee, there was due Mrs. Seagraves the sum of $217,429.75, hence the only remaining issue-of-fact about that indebtedness was whether it constituted her separate estate; the submission of special issues 18 and 19, as described above, did not therefore constitute prejudicial error, since the plain objective of both was to elicit, one way or another, the determinative facts upon whether or not it was her separate property; while No. 18 does not inquire as to the capacity in which Mrs. Seagraves held that indebtedness, No. 19 supplied that requisite by propounding the ultimate issue upon that phase of the controversy, that is, whether or not it was her separate property; the jury having answered that it was, the controversy ended there. Weatherby v. Guerrero, Tex.Civ. App., 82 S.W.2d 1059; Poteet v. Waggoner Estate, Tex.Civ.App., 96 S.W.2d 405.

■ The fourth group of appellant's propositions, in another form, reassert that Mrs. Seagraves' 500 shares of appellee-corporation stock, as well as the $217,429.75 debt so due her, were community properties between herself and her husband, because they constituted "profits derived from the investment of the wife's separate funds", and that these moneys and debts due her had been so mingled together in a common fund and used by the garnishee, Chapman Minerals Corporation", with funds it held of her husband, that all semblance of a separate property right in her to them had disappeared; especially as she failed to discharge the burden upon her to trace those holdings through such intermingled processes and show them to have remained isolated as her own.

The record affords what seems to be a complete answer to this contention, in that —as before pointed out—these two classes of properties, by the determinative tests applying in that regard, were conclusively shown to have been, not profits from the investment of Mrs. Seagraves' separate funds, nor to have been commingled with any properties of her husband in the hands of the appellee or elsewhere, but to have been both the results of the sales of her separate holdings; that being true, under the law of Texas, their character as separate property never changed, but at most there was the mere exchange of one form of her separate property for another. Parker v. Coop, 60 Tex. 111; Gillespie v. Gillespie, Tex.Civ.App., 110 S.W.2d 89; Stephens v. Stephens, Tex.Civ.App., 292 S. W. 290; Turbeville v. Commissioner, 5 Cir., 84 F.2d 307, 308; 23 Tex.Jur., Sec. 67; Estrada v. Reed, Tex.Civ.App., 98 S.W.2d 1042; Mitchell v. Mitchell, 80 Tex. 101, 15 S.W. 705; Stanolind Oil & Gas Co. v. Simpson-Fell Oil Co., Tex.Civ.App., 85 S.W.2d 325, 327; Ralls v. Ralls, Tex.Civ.App., 256 S. W. 688; Ochoa v. Edwards, Tex.Civ.App., 189 S.W. 1022.

■ Proposition group No. 5 presents one of the main bones of contention of the whole controversy—that is, six $25,000 notes, totaling $150,000, that the appellee was shown to have executed and delivered to O. R. Seagraves, which appellant insists "had been ear-marked and recognized by the parties as community-property of O. R. Seagraves, and still remained community-property liable for appellant's community debt and garnishment."

As to this transaction, the testimony showed and the jury, in effect, on sufficient evidence found, that these six notes had been executed, on the dates they bore, by the appellee to O. R. Seagraves "to be used as collateral to secure certain indebtedness, and four of them were used for that purpose and the other two were never used, because the loans where they were to be used were never made, and that when the loans in which four of the said notes were used as collateral security were paid the four notes were returned to the corporation, and all six of the notes were marked 'cancelled', and the signature of the president thereof cut from same, and, therefore, the jury was warranted in finding in response to Special Issue No. 1, that the garnishee was not indebted to O. R. Seagraves at the time the writ of garnishment was served upon it."

In other words, the jury, with these cancelled notes before them, answered the inquiry by finding that such mere accommodation to Seagraves had been so afforded by the appellee in allowing him to use its notes as collateral, which purpose had already been subserved before that date and that on December 16 of 1938, when the writ of garnishment was served

upon the appellee, it had not owed Seagraves anything.

Since, as indicated, there was ample evidence to sustain this finding, even if it had been attacked as not sufficiently supported, the jury's arbitrament settled that phase of the case.

Group 6 reflects appellant's claim that the $40,000 proceeds from the voluntary sale of O. R. Seagraves' Kerr County homestead, "which was delivered by him to appellee on June 13 of 1936, and which was intermingled with other assets reaching the appellee, which continuously from that date, until it was served with the garnishment writ on December 16 of 1938, remained heavily indebted to Chapman, Trustee", was community-property, hence subject to such writ.

The facts and the findings, likewise upon this feature, show: (1) That the $40,000 was repaid by the appellee to Seagraves prior to December 16 of 1938, and (2) that on that date he was neither indebted to it on other accounts, nor did it have at that time any effects belonging to him in its possession. Neither does it appear that there was here any intermingling of assets, wherefore the legal consequences the appellant invokes did not attach to an instance of this kind; if, as the jury found, Seagraves merely loaned the appellee money—such as the $40,000 and the $100,000 items involved—whether there was any express agreement about the transactions or not, there was at least an implied obligation that it should return him the money, and if it had done so, as the jury's findings indicate, before this writ of garnishment had been served upon it, there was nothing for the writ to impound. Schwartzberg v. Friedman, Tex.Civ.App., 34 S.W. 335.

Appellant's 7th group of contentions seeks in another way to show the $150,000 item—made up of the six $25,000.00 notes above discussed—to be community property, hence subject to writ of garnishment; but, as already determined, the proof and the findings show that none of these notes were obligations of the appellee on December 16 of 1938, when the garnishment writ was served, hence the jury's finding that appellee was not indebted to Seagraves on that date entitled it to the acquittance the court awarded.

Appellant's 8th group insists that W. W. Chapman and the appellee were agents and trustees for O. R. Seagraves, and as such held and commingled moneys belonging to him, as well as to his wife and daughter, Mrs. Davis, to the extent that the appellee was shown to have been indebted on those accounts to Chapman as Trustee on December 31, 1938, to the extent of $428,237.47; still unless and until it was further shown, first, that the appellee was indebted to Seagraves, or second, that it had effects of Seagraves in its possession at the time this garnishment writ was served upon it, no liability against the corporation would result. That result of necessity follows, because both the proof and the findings were that the appellee corporation had, prior to the service of the garnishment writ upon it, paid all of its indebtedness on account of any money belonging to O. R. Seagraves that had been delivered to it through Chapman, Trustee, or otherwise. Added to that, is the fact that there was no evidence showing that the funds of Mr. Seagraves, Mrs. Seagraves, and Mrs. Davis had been so commingled that the parts belonging to each of them could not be readily isolated and identified. It follows that no error in this respect was made to appear. Speer on Married Women, p. 433, Sec. 356; City of Ennis v. Telfair, Tex.Civ.App., 22 S.W.2d 327.

Further claims that appellee was not entitled to attorney's fees, because it had been an active litigant in this case, that it was not a mere stakeholder, because it was trying to "substantiate its title to the Morgan-Clark lease, and that it was a mere alter ego of O. R. Seagraves", are overruled, without extended discussion, as being without substantial merit; it was shown to have litigated herein only the questions of whether it was indebted to O. R. Seagraves, and whether he owned stock in it. Under its answer thereto, pursuant to R.S. Article 4101, it was entitled to be discharged with its costs and reasonable attorney's fees.

Further discussion is deemed unnecessary since these conclusions determine the merits of the appeal. They require an affirmance of the trial court's judgment; it will be so ordered.

Affirmed.