## MEYERS et ux. v. BAYLOR UNIVERSITY IN WACO. (No. 10180.)

Court of Civil Appeals of Texas. Dallas. April 21, 1928.

Rehearing Denied May 26, 1928.

**1. Trusts ☞372(3)—Judgment establishing constructive trust in property as purchased with embezzled funds held warranted by evidence.**

Evidence *held* to warrant judgment establishing constructive trust in certain real and personal property as having been purchased with proceeds of money embezzled from plaintiff by defendant while in plaintiff's employ.

**2. Trusts ☞358(1), 372(3)—Trust fund must be clearly traced into other specific property to establish constructive trust therein, but no more than fair preponderance of evidence is required.**

To establish constructive trust on theory of tracing embezzled trust funds into other property, trust fund must be clearly traced into other specific property, and nothing must be left to conjecture, and no presumptions except usual and necessary deductions from facts proved can be indulged, but trust need not be established beyond reasonable doubt nor by more than fair preponderance of evidence.

**3. Trusts ☞372(1)—On proof of embezzlement, burden was on defendant to show that his money, and not embezzled money, paid for property in which plaintiff sought to impress constructive trust.**

Though burden was on plaintiff of proving constructive trust on theory that funds embezzled from plaintiff by defendant were traced into property purchased by him, when fiduciary relationship of parties, betrayal of trust, and probable amount of embezzlement was shown, prima facie case was presented, and burden was then on defendant to show that his money, and not plaintiff's, paid for property in whole or in part.

**4. Trusts ☞372(1)—Every intendment was against embezzling employee refusing to testify in action to impress constructive trust on property purchased by him.**

Where defendant employee embezzled funds from plaintiff who sought to impress constructive trust in property purchased by defendant, it was defendant's duty to reveal entire truth, and, on his failure to testify or to make any explanation of the matter, every intendment was against him.

**5. Trusts ☞352—On employee's deposit of embezzled money with his own in bank, mingled fund became subject of constructive trust.**

Where employee deposited his own and money embezzled from employer to his personal credit in bank, thereby destroying identity of funds, whole mingled fund became subject to trust as well as all property purchased therewith.

**6. Trusts ☞352, 354, 372(1)—On trustee's mingling of trust fund with his own, mingled fund or property into which it can be traced becomes subject to trust; burden of separating property being on trustee.**

Where a trustee so mingles trust fund with his own, or so invests it together with his own, that trust fund cannot be separated, or the amount of each cannot be ascertained, the whole becomes subject to the trust, except so far as trustee may be able to distinguish or separate his own fund therefrom, and burden of making such distinction or separation is on trustee or his representative, and this rule applies so long as any portion of the fund or property into which trust fund can be traced remains.

**7. Evidence ☞313—Trial court was not required to believe unsworn self-serving statement of defendant that wife furnished part of price for property against which plaintiff sought to establish constructive trust.**

In action to establish constructive trust against property claimed to have been purchased by defendant with embezzled funds, trial court was not required to accept as true unsworn self-serving statement of defendant that part of purchase price of property was furnished by his wife; credibility of defendant and weight of his testimony being for trial judge as trier of facts.

**8. Stipulations ☞14(10)—Admission by plaintiff seeking to impress property with trust that defendant owned property involved held not to defeat cause of action, being mere admission that legal title was in defendant.**

In action to establish constructive trust against property claimed to have been purchased by defendant with embezzled funds, plaintiff's admission that defendant was owner of property described in petition, and that it was occupied by him as his homestead, *held* not to defeat its cause of action, but was mere admission that defendant was legal owner, and in possession of property sued for.

Error from District Court, Dallas County; Kenneth Foree, Judge.

Suit by the Baylor University in Waco against William J. Meyers and wife. Judgment for plaintiff, and defendants bring error. Affirmed.

J. N. Townsend, of Dallas, for plaintiffs in error.

Touchstone, Wight, Gormley & Price, of Dallas, for defendant in error.

LOONEY, J. Baylor University in Waco, a corporation, sued William J. Meyers and wife, Mary S. Meyers, to establish a constructive trust in and to recover from defendants title and possession of certain real and personal properties.

Plaintiff alleged, in substance, that William J. Meyers was in its service in connection

with the operation of institutions located at Dallas, and had for more than ten years systematically embezzled and appropriated to his use its funds that exceeded in amount the sum of $25,000, and invested same in the properties sued for, to wit, a certain lot of land at 6147 Bryan Parkway, in the city of Dallas, the improvements thereon, the furniture and furnishings for same, and also a share of stock in the Dallas Athletic Club.

Defendants answered by general demurrer and general denial.

The case was tried without a jury, resulting in judgment for plaintiff for the properties mentioned, and enjoining defendants from in any way selling or disposing of same. From this judgment defendants have appealed by writ of error.

Appellants contend that the burden of proof was on plaintiff to trace the embezzled funds into the identical properties sought to be impressed, and, as the evidence was insufficient to discharge this burden, the court erred in rendering judgment for plaintiff.

This proposition challenges the sufficiency of the evidence to sustain the judgment, and presents the only material question for consideration.

[1] The evidence warrants these conclusions: William J. Meyers was an employee of plaintiff for a period of ten years and ten months, beginning in March, 1916, and ending in the month of December, 1926, in connection with the management of several of its institutions located at Dallas, and, by virtue of this connection, was authorized to, and did, collect and disburse moneys belonging to plaintiff.

In December, 1926, certain irregularities pertaining to business matters were discovered. Meyers was under suspicion, and, on being questioned, denied guilt, but later, when confronted with evidence, confessed that he had embezzled funds belonging to plaintiff to an amount not exceeding $1,200. During the progress of the investigation, as additional revelations were made, he confessed that his embezzlements amounted to various sums, to wit: $3,000, $3,300, $5,000, $6,000, and even as much as $7,500. An audit of the accounts kept by him with three banks showed that, from and including March, 1916, to and including December, 1926, he deposited to his personal accounts the gross sum of $81,589.22, of which $32,975 was his salary. He furnished, at the request of officials of plaintiff, a statement showing that all moneys of whatever nature or origin, other than salary, deposited in these accounts, amounted to the sum of $23,325.16. He thereupon admitted that the sum of these items, to wit, salary and other moneys deposited shown in statement, subtracted from the total deposits in the banks, revealed the total amount of his embezzlements, which, by this method, were shown to be in excess of $25,000.

The record justifies the conclusion that Meyers began his wrongdoing practically at the beginning of his service in March, 1916, and that it extended throughout the 10 years and 10 months of his service. In only 1 month of the 130 involved did his salary exceed his deposit, and in only 7 were his deposits and salary equal in amounts, whilst for the balance of the time, 122 months, his deposits were uniformly larger than his salary, in amounts ranging from $7, the lowest, to $1,993.80, the highest.

On being questioned in regard to a certain lumber transaction, at first he denied any guilt, but later admitted that lumber, worth $368.00 belonging to plaintiff, was used by him in constructing the garage on the land in controversy.

The residence property and improvements cost in 1921 $16,500, for which he is still indebted $5,000; the furniture and furnishings cost $6,000, for which he is still indebted $1,500, and the Dallas Athletic Club stock cost $500. He also invested in building and loan association stock of the value of approximately $4,700, which was surrendered to plaintiff on his shortage. Altogether these items show total investments of $21,200. Meyers deposited in the banks money taken from plaintiff with his own—destroying the identity of each fund—and evidently drew on this mixed fund to pay for the properties in controversy, as it appeared from the evidence that he had no other money or property with which to make the investments. In order to avoid detection, he systematically abstracted and destroyed plaintiff's records of business transactions, as well as records of his personal accounts and canceled bank checks.

Do these facts sustain the judgment? We think so.

[2] Our courts have often said that, in order to establish a trust, such as is attempted in this case, the trust fund must be clearly traced into other specific property; that nothing must be left to conjecture, and that no presumptions, except the usual and necessary deductions from facts proven, can be indulged (King v. Gilleland, 60 Tex. 271; Glasscock v. Hamilton, 62 Tex. 143; Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85; Texas Moline Plow Co. v. Kingman, etc., 32 Tex. Civ. App. 343, 80 S. W. 1042; Blumenthal v. Nussbaum [Tex. Civ App.] 195 S. W. 275; Brooks v. Cherry [Tex. Civ. App.] 298 S. W. 170, 175); yet this does not mean that the trust must be established beyond a reasonable doubt (King v. Gilleland. 60 Tex. 274), nor that any more than a fair preponderance of the evidence is required to determine the issue, as in other civil cases (Mitchell v. Mitchell, 80 Tex. 101, 113, 15 S. W. 705; Mitchell v. Mitchell, 84 Tex. 303, 307, 308, 19 S. W. 477).

[3] It is quite true that the burden of proof was upon plaintiff to establish the trust, but, when proof of the fiduciary relationship of the parties was made, the betrayal of the trust, and probable amount of the embezzle-

ments shown, a prima facie case was presented, and the burden was then on Meyers to show, if he could, that his money, and not that of the plaintiff, paid for the properties in whole or in part.

[4] Meyers was in possession of the exact facts, and it was his duty to reveal the entire truth. As he did not testify, and made no explanation of this matter, every intendment is against him. 20 C. J. p. 482, § 78; 39 Cyc. p. 476.

[5] As stated in our conclusions, Meyers deposited his own and money embezzled from plaintiff to his personal credit in the banks, thus destroying the identity of these funds; hence the whole mingled fund became subject to the trust, as well as all property purchased therewith.

[6] The rule applicable to these facts is clearly and satisfactorily stated in 39 Cyc. p. 538, as follows:

"Where a trustee so mingles the trust fund or property with his own, or so invests it in property together with his own, that the trust fund or property cannot be separated, or the amount of each ascertained, the whole mingled fund or property becomes subject to the trust, except so far as the trustee may be able to distinguish or separate his own fund or property, the burden of making such distinction or separation being on the trustee or his representative; and this rule applies so long as any portion of the fund or property into which the trust fund or property can be traced, remains."

See, also, 2 C. J. p. 741, § 407; 1 Mechem on Agency (2d Ed.) § 1335.

That this is the approved doctrine in this state, see Robb v. Robb (Tex. Civ. App.) 41 S. W. 92, 95; Zundell v. Gess, 73 Tex. 144, 146, 147, 10 S. W. 693.

The facts hereinbefore recited, in our opinion, fully sustain the judgment of the court.

In the case of First State Bank of Ellinger v. Zelesky (Tex. Civ. App.) 262 S. W. 190, 192, the court found the existence of a constructive trust on similar facts. The court said:

"Under the equitable doctrine of constructive trust, these facts show that Joe Zelesky was never the owner of the property. Having purchased the property with funds embezzled by him from appellant, he took and held the legal title, which passed to him by the deed of his vendor, in trust for appellant, in which the superior equitable title vested.

"The fundamental principle of trusts is the division of an estate or title by which the legal title is placed in one and the equitable title in another, and courts of equity have uniformly extended this principle to all cases of fraud and breach of good faith by which the legal title to property is acquired by one with funds belonging to another. Whenever trust funds are used by a trustee to purchase property for himself, his legal title to the property is always subordinate to the equitable title of the owner of the funds with which it was purchased. By the application of the salutary and efficient principle of equity, the remedy afforded the owner of specific property, or of funds intrusted to another, who has suffered by the fraud or bad faith of his trustee, is more just and complete than that afforded by a suit at law for compensatory damages. Pomeroy's Equity Jurisprudence, p. 1144 et seq.

"We think the facts of this case call for the application of this doctrine to its fullest extent."

We are of the opinion, and so hold, that plaintiff fully sustained its allegations as to the existence of a constructive trust in its favor, in all properties sued for.

[7] Appellants insist, however, that the undisputed evidence shows that the lot of land in controversy was paid for, in part at least—that is, to the extent of $1,100—with the separate funds of Mrs. Meyers; that she was innocent of any wrongdoing in the premises, was even ignorant of the misconduct of her husband; therefore it was error for the court to divest her of title to her interest in the land.

This contention is based on the unsworn, self-serving statement of Mr. Meyers, who, in the midst of many contradictory statements, said to Mr. Carr P. Collins, a member of the board of directors of plaintiff, with whom Meyers did most of his talking in regard to the matters involved; that his wife received an inheritance from her father's estate, spoken of several times as $1,100 and at another time as $2,200; that $1,100 was in a savings account when the land in question was contracted for; that the money was transferred from the savings account to the checking account, and was drawn on in paying for the lot. The trial judge was under no compulsion to believe the statement of Meyers; he evidently discredited it. As trier of the facts, the judge exercised the functions of a jury, was judge, not only of the credibility of Meyers, but of the weight to be given his unsworn statement, and, as his credibility was very badly shot to pieces by disclosures of his dishonorable conduct extending over a series of years, the contradictory statements made by him, and evident uncandid attitude when questioned about his misconduct, it is not at all surprising that the trial judge disregarded his statement entirely.

[8] Appellants further contend that the court erred in rendering judgment for plaintiff, for the reason that, on the trial of the cause, plaintiff made an admission that the defendant William J. Meyers was owner of the lot of land in question.

It appears from the statement of facts that, while Mr. Collins, witness for plaintiff, was being examined, the question of title to the property was reached in the examination, and thereupon the parties had the following agreement entered as part of the facts of the case:

"It is admitted by counsel for the plaintiff and by counsel for the defendant that W. J. Meyers owns the property described in plaintiff's petition, and that it is occupied by him as his homestead."

Plaintiff's case is based on the idea that, while defendant Meyers is the legal owner and in possession of the properties sued for, the equitable title belongs to plaintiff, in that the same were paid for with its money. It would, in our opinion, give a very unreasonable construction to this agreement to hold, as contended by appellants, that plaintiff thereby admitted itself out of court. The admission, in the connection and under the circumstances when made, means no more than that the legal title to, and the apparent ownership of, the land in controversy stood in the defendant Meyers. This view is in harmony with the theory upon which the suit was launched and with plaintiff's contention throughout.

After a careful consideration of appellant's assignments and propositions, we find them without merit; hence they are overruled; and the judgment of the court below is affirmed.

Affirmed.