HENRY J. ANDERSON, JR., V. S. A. PENIX, CHAIRMAN OF DEMOCRATIC EXECUTIVE COMMITTEE, YOUNG COUNTY.

No. 7968. Decided April 15, 1942.
(161 S. W., 2d Series, 455.))

*Henry J. Anderson, Jr.,* of Wichita Falls, for relator.

*Fred T. Arnold,* and *Marshall & King,* of Graham, *George T. Robertson* and *A. H. Bratain,* of Wichita Falls, for respondent.

*Ruben Loftin,* of Graham, and *T. R. Boone,* of Wichita Falls, filed briefs as amici curiae.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is an original mandamus proceeding brought in this Court by Henry J. Anderson, Jr., against S. A. Penix, Chairman of the Democratic Executive Committee of Young County, Texas. The record shows the following facts: S. A. Penix is the duly elected and constituted county chairman of the Democratic party in and for Young County, Texas. Henry J. Anderson, Jr., is a practicing attorney, who resides in Wichita County, Texas. Anderson is fully qualified under the laws of this State to fill the office of district attorney. On February 12, 1942, Anderson in due form of law filed with Penix his application to have his name printed on the official ballot of the Democratic party primary election to be held in Young County, Texas, in July 1942, as a candidate for the Democratic party nomination for the office of district attorney for the 30th Judicial District of Texas, as composed of the Counties of Wichita, Archer, and

Young. Penix refused to receive such application on the ground that Young County will have no right to participate in the election of a district attorney for the 30th Judicial District as so composed. This is the one question involved in this action.

As defined by Vernon's Texas Statutes, 1936, the 30th, 90th, and 97th Judicial District of Texas are constituted as follows:

(a) The 30th District is composed of the Counties of Wichita, Archer, and Young.

(b) The 90th District is composed of the County of Stephens.

(c) The 97th District is composed of the Counties of Montague and Clay.

The above-named judicial districts were reorganized by the 47th Legislature, House Bill No. 161, Ch. 626, p. 1386. Vernon's Tex. Civ. Stat. 1942 Supp. Art. 199, Dist. 30, and note 90, 97. This Act was approved July 23, 1941, and became a law ninety days after the adjournment of the Legislature. At this point we deem it advisable to quote the entire Act. It is as follows:

"H. B. No. 161.

### CHAPTER 626.

"An Act to reorganize the Thirtieth, Ninetieth, and Ninety-seventh Judicial Districts of the State of Texas; providing for holding the District Courts and terms in said Judicial Districts respectively; providing that all process and writs heretofore issued, and that all recognizances and bonds heretofore made and executed and returnable to existing terms of District Courts in the counties composing said districts, together with jurors heretofore selected, are valid and returnable to the first term of such Court after this Act takes effect; providing that the County Attorneys of the respective counties within said Ninety-seventh Judicial District shall perform the duties of District Attorneys in their counties as well as the duties now performed by them, and providing fees of office for such County Attorneys; providing for the jurisdiction of said District Courts, and providing for the continuation of the existing District Courts in said counties in session when this Act takes effect to the end of their terms; providing the effective date of the Act; repealing all conflicting laws; and declaring an emergency.

"*Be it enacted by the Legislature of the State of Texas:*

"Section 1. The County of Wichita shall hereafter constitute and be the Thirtieth Judicial District of the State of Texas, and the terms of the District Court shall be held in said District beginning on the first Monday in January, March, May, July, September, and November, and each term may continue eight (8) weeks, and the Judge of said Court may, in his discretion, have a grand jury drawn for and organized at any of said terms of Court.

"Sec. 2. The Counties of Stephens and Young shall hereafter constitute and be the Ninetieth Judicial District of the State of Texas, and the terms of the District Courts shall be held therein each year as follows:

"In the County of Stephens, on the first Monday in January, March, May, July, September, and November, and may continue in session until Saturday immediately preceding the Monday for convening the next regular term of such Court in Stephens County.

"In the County of Young on the first Monday in February, April, June, August, October, and December of each year and may continue in session until the Saturday immediately preceding the Monday for convening the next regular term of such Court in Young County.

"Any term of Court may be divided into as many sessions as the Judge thereof may deem expedient for the dispatch of business.

"All process issued, bonds and recognizances made and all grand and petit juries drawn before this Act takes effect shall be valid and returnable to the next succeeding term of the District Courts of the several counties as herein fixed as though issued and served for such terms and returnable to and drawn for the same.

"The District Judge and District Attorney of the Ninetieth Judicial District now elected and acting as such shall continue to hold the offices of District Judge and District Attorney of the Ninetieth Judicial District in and for Stephens County and Young County, until the terms for which they have been elected expire and until there have been elected and qualified successors thereto.

"Sec. 3. The Counties of Archer, Clay and Montague shall hereafter constitute and be the Ninety-seventh Judicial Dis-

trict of the State of Texas, and the terms of the District Courts shall be held in said district as follows:

"In Archer County on the first Monday in January and may continue four (4) weeks; on the 13th Monday after the 1st Monday in January and may continue four (4) weeks; on the 25th Monday after the 1st Monday in January and may continue four (4) weeks; on the 37th Monday after the last Monday in January and may continue four (4) weeks. .

"In Clay County on the 5th Monday after the 1st Monday in January and may continue four (4) weeks; on the 17th Monday after the 1st Monday in January and may continue four (4) weeks; on the 29th Monday after the 1st Monday in January and many continue four (4) weeks; on the 41st Monday after the 1st Monday in January and may continue four (4) weeks.

"In Montague County on the 9th Monday after the 1st Monday in January and may continue four (4) weeks; on the 21st Monday after the 1st Monday in January and may continue four (4) weeks; on the 33rd Monday after the 1st Monday in January and may continue four (4) weeks.

"Sec. 4. The County Attorneys of the respective counties embraced within the Ninety-seventh Judicial District shall do and perform the duties of County Attorneys and District Attorneys in their respective counties, and shall receive such fees for their services as are now or may hereafter be provided by law.

"Sec. 5. That all process and writs heretofore issued out of the District Courts of said respective counties constituting the districts herein mentioned and returnable to terms of Court in said counties according to existing law are hereby made returnable to the terms of the District Courts of said respective counties as said terms are fixed by this Act, and all bonds executed and recognizances entered in said Courts shall bind the parties for their appearance or to fulfill the obligations of such bonds and recognizances at the term of said courts as they are fixed by this Act, and all process heretofore returned, as well as all bonds and recognizances heretofore taken in District Courts of said respective counties shall be as valid as though no change had been made in the said districts and the time of holding courts therein, and all grand and petit jurors drawn and selected under existing laws for any of the counties of

said district are hereby declared lawfully drawn and selected for the first term of the District Courts of such respective counties held in conformity with this Act.

"Sec. 6. This Act shall take effect and be in operation on and after January 1, 1943.

"Sec. 7. That all laws and parts of laws in conflict with the provisions of this Act be and the same are hereby repealed.

"Sec. 8. The crowded condition of the docket in the District Courts of Young, Archer, and Stephens Counties, and the inability of parties litigant to have their cases heard and disposed of without unusual and disastrous delay create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby suspended and that this Act shall take effect and be in force immediately from the date of its passage, and it is so enacted."

A reading of the above Act will disclose that it reorganizes the 30th, the 90th, and the 97th Districts as follows:

(a) The 30th District, as defined by the Act, is composed of the County of Wichita alone.

(b) The 90th District, as defined by the Act, is composed of the Counties of Young and Stephens.

(c) The 97th District, as defined by the Act, is composed of the Counties of Archer, Clay, and Montague.

■ As we understand his petition and argument, Anderson contends that because Section 6 of the above-quoted Act provides "This Act shall take effect and be in operation on and after January 1, 1943," the Counties of Wichita, Archer, and Young shall jointly elect the district attorney for the 30th Judicial District at the election to be held this, the year 1942. In order to sustain this contention we would have to construe this Act as having no effect whatever as regards the election of district attorneys in any of the reorganized districts in the election to be held this year. Such a construction would be to hold that the Legislature intended that Archer and Young Counties should participate with Wichita County in the election of a district attorney, who it is already provided shall serve in Wichita County only. Also, such a construction would be to say that the Legislature intended that a district attorney might be elected from

either Archer or Young Counties to serve only in Wichita County, and this in spite of the fact that Article 332, R. C. S. 1925, provides that: "District * * * attorneys shall reside in the district * * * for which they were elected." Finally, such a construction would be to say that the Legislature intended that Young County should have no voice in the election of the district attorney, who it is already provided shall serve it along with Stephens County. Manifestly, the above Act should not be given a construction that would produce results so contrary to public justice if it can reasonably be given a construction that will not do so. This is because of the rule that a statute will not be construed so as to ascribe to the Legislature an intention to do an unjust or an unreasonable thing, if such statute is reasonably susceptible of a construction that will not accomplish such a result. Trimmier v. Carlton, 116 Texas 572, 296 S. W. 1070; Winder v. King (Com. App.), 1 S. W. (2d) 587; 39 Tex. Jur. 174.

■ It is a settled rule that where a statute is plain and unambiguous it will be enforced according to its words. On the other hand, it is a rule in this State, and the rule generally, that "In construing statutes it is the duty of the court to ascertain the legislative intent, and when such intent is once arrived at it should be given effect; in fact, such intent is the law." Popham v. Patterson, 121 Texas 615, 51 S. W. (2d) 680.

Another rule of statutory construction is that it is the duty of the court to examine the entire Act and construe it as a whole. 39 Tex. Jur. 172, and authorities there cited. By "the entire Act" we mean the caption, the body of the Act, and the emergency clause. In this connection, we hold that the emergency clause is proper to be considered in arriving at the legislative intent, even though it did not become effective for the purpose of putting the law into immediate effect. Popham v. Patterson, supra.

■ We now come to examine this Act in the light of the above rules. An examination of the caption shows an intention to reorganize the three judicial districts above mentioned. The body of the Act says that certain counties shall hereafter constitute certain districts. The emergency clause demonstrates an intent that the law shall, at least to some extent, immediately become operative. All these show an intent to pass a law that would become effective, at least for some purposes, before January 1, 1943. The law then contains the provision that it

shall take effect and be in operation on and after January 1, 1943. The law contains other provisions which show that the courts involved will not operate thereunder until January 1, 1943. The Act became a law ninety days after the adjournment of the Legislature which enacted it. Popham v. Patterson, supra. At that time it became effective, except as to certain matters which were postponed until a later date. The law gives notice as soon as it becomes a law. Popham v. Patterson, supra. When the provision in regard to the effective date is considered with the balance of the Act, it is evident that the Legislature only intended thereby to postpone operation of the courts affected until January 1, 1943. The Act also demonstrates an intention to permit all elected officers to serve out their terms of office. The Act does not intend that offices now occupied by officers whose terms of office expire on January 1, 1943, shall be filled for terms beginning on that date by the voters of counties which will not be in the district which such new officers will serve.

The effect of our decision is that Wichita County alone will elect the district attorney for the 30th district. Stephens and Young Counties will elect the district attorney for the 90th district. It appears from the Act that the 97th district will elect no district attorney. The Act provides that the county attorneys of the respective counties embraced within the 97th district shall do and perform the duties of county and district attorneys in their respective counties, etc. We understand that the district judge of the 90th district has been elected for a term ending January 1, 1945. Under the express terms of this Act he will continue to serve the 90th district as reorganized, and as composed of Stephens and Young Counties, until his term of office expires on the date last above mentioned.

Because Young County will have no lawful right to participate in the election of a district attorney for the 30th judicial district, the mandamus here prayed for will be denied.

Opinion delivered April 15, 1942.