Talmage Boston Payne & Vendig, Dallas, for appellants.

David L. Sherwood, Dallas, for appellees.

## CURTIS SHARP CUSTOM HOMES, INC. and Curtis Sharp, Appellants,

v.

## Jo Ann GLOVER and David Gene Glover, Appellees.

### No. 05–84–00455–CV.

Court of Appeals of Texas, Dallas.

Nov. 4, 1985.

Rehearing Denied Dec. 13, 1985.

DEVANY, Justice.

Jo Ann Glover, one of the appellees, was employed by Curtis Sharp Custom Homes, Inc., and Curtis Sharp, appellants ("Sharp"), as a secretary and bookkeeper, beginning in January, 1980. It is alleged that she embezzled over $70,000.00 from Sharp during the course of her employment. Jo Ann Glover was convicted of that crime and Sharp later filed a civil suit against her and her husband, David Gene Glover, the other appellee. The court gave judgment to Sharp for $70,786.00, and, apparently, found that $5,004.31 of those embezzled funds were used to pay for improvements to the previously existing homestead property owned by the Glovers. We say "apparently" because there was no specific finding recited in the judgment that this is so. As part of that civil judgment, the court granted Sharp an "equitable lien" in the amount of $5,004.31 against "Jo Ann Glover's undivided half interest in the Glover homestead," but also held that Sharp take nothing against David Glover. No appeal was taken from that judgment, hence, it must be considered final. Subsequent to that judgment, Sharp demanded payment from the Glovers, but

they refused to pay. Thereafter, Sharp filed the present suit to foreclose the equitable lien against Jo Ann's undivided one-half interest in the homestead. Each side filed a motion for summary judgment. On February 2, 1984, the trial court issued summary judgment for the Glovers, ruling that the equitable lien granted in the first lawsuit could not be foreclosed. We affirm.

In a single point of error, Sharp contends that its equitable lien can be foreclosed against Jo Ann's homestead interest. We disagree. The court in *Smith v. Green,* 243 S.W. 1006, 1007 (Tex.Civ.App.—Amarillo 1922, no writ), stated the fundamental principle that:

> The Constitution (article 16, § 50) *protects the homestead against forced sale for the payment of all debts* except for purchase money, taxes and improvements, and provides that no lien on the homestead shall be valid except it be created for such character of debt, and provides that the lien to secure a debt for improvements must be created in a particular manner; otherwise it cannot exist. (Emphasis added.)

In the instant case, the embezzled funds were property which Sharp was deprived of and which, by judicial decree, resulted in a personal judgment and a purported equitable lien against Jo Ann Glover's previously acquired interest in the homestead property to the extent of $5,004.31. Since the purported equitable lien was imposed by judicial decree, we must examine the jurisdiction of the trial court in that case over the subject matter, to-wit: the homestead, in view of the language of the constitution. TEX.CONST. art. XVI, § 50.

In 1951, this court stated "that a forced sale of the homestead in satisfaction of a debt of any character except as provided by the Constitution ... is void." *Cline v. Henry,* 239 S.W.2d 205, 208 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.). The court in that case went so far as to state that a lien created by *judicial decree* against a homestead was void. *Cline,* 239 S.W.2d at 208.

We distinguish the cases cited by Sharp from the instant case. In none of those cases was a lien imposed upon a previously existing homestead and then allowed to be foreclosed against the homestead property. Taking these cases in chronological order, we find a common underlying principle used by the courts in arriving at the results. The cases we refer to are: *Smith v. Green,* 243 S.W. 1006 (Tex.Civ.App.—Amarillo 1922, writ ref'd); *First State Bank of Ellinger v. Zelesky,* 262 S.W. 190 (Tex.Civ.App.—Galveston 1924, no writ); *Meyers v. Baylor University in Waco,* 6 S.W.2d 393 (Tex.Civ.App.—Dallas 1928, writ ref'd); and *Bush v. Gaffney,* 84 S.W.2d 759 (Tex.Civ.App.—San Antonio 1935, no writ).

In *Smith v. Green,* the wrongfully used partnership funds were used for improvements on the homestead which the married couple continued to occupy. When they exchanged the homestead for another, they received a new homestead plus $11,500.00 in cash which they deposited into a bank. The court's rationale permitted the imposition of a constructive trust which allowed the court to follow the trust property through its mutations into its changed form which was the bank deposit of $11,500.00, not the new homestead.

In *Ellinger,* the husband embezzled funds which he used in part to purchase and improve property, which he *subsequently* declared as homestead. The court used the doctrine of constructive trust to hold that the husband was never the owner of the property. In *Meyers,* again the husband stole funds and purchased a home which he *subsequently* declared homestead. Again the doctrine of constructive trust was used to follow the funds. In *Bush,* a fraud in real estate was used by Bush to purchase a homestead. The court used the constructive trust doctrine to follow the proceeds into property which became homestead *after* purchase.

We distinguish these cases based on the rationale that, where a constructive trust is declared to exist on the stolen funds, the trust property may be traced in its muta-

tions to property purchased with the stolen funds, providing the property can be identified and is not a *previously existing homestead*. The property acquired belongs to the beneficiary of the trust and a *subsequent declaration* of homestead is *too late* to protect the mutated stolen constructive trust property.

The case before us is unique because a prior final judgment has imposed a lien on one-half of the already existing homestead. Since the Glovers did not make a direct attack upon that judgment, either by a bill of review or an appeal, it must be considered as final, although it may be void for want of jurisdiction over the subject matter. *Middleton v. Murff*, 28 Tex.Sup.Ct.J. 396, 689 S.W.2d 212 (1985). In *Middleton* at 397, 689 S.W.2d 212, the supreme court stated that it recognized:

> an exception to the Rule 329b(f) requirement of a bill of review in cases where the court rendering the judgment had no "jurisdictional power" to do so. We have defined "jurisdictional power" in this sense to mean "jurisdiction over the subject matter, the power to hear and determine cases of the general class to which the particular one belongs."

The record presented to us in this case includes the petition of Sharp in the first lawsuit, which clearly states that Sharp seeks a lien on a family homestead. Hence, the court in that first lawsuit knew it was dealing with a constitutionally protected homestead, which is evident from the judgment. While we have no authority over the former judgment, we are, nevertheless, compelled to collaterally view the equitable lien as a nullity. In this case, David Glover filed a separate answer in the court below in which he attacked the validity of the equitable lien established in the first lawsuit and cited the constitution as his basis for such attack. Thus, we are presented with the question of a final, non-appealable judgment which appears void on its face, and which one of the appellees collaterally attacked. The question then is whether his attack is limited to a bill of review in the former lawsuit or may he attack the lien imposed by the former judgment in this subsequent action? The answer lies in what the supreme court meant in its definition of "jurisdiction" over the subject matter in *Middleton*.

Since we are bound by legal precedent, we look for help in *Barnett v. Eureka Paving Co.*, 234 S.W. 1081 (Tex.Comm'n App.1921, opin. apprvd), a landmark case on this subject, which held the prior judgment a nullity based on facts almost identical to those in the present case. The court held in *Barnett* that the trial court lacked the jurisdiction to impose a lien on a homestead in violation of the constitution.

In the case before us, the original petition in the former lawsuit is presented in the record and it identifies the property, against which the lien is sought, as homestead. The judgment of the former lawsuit clearly sets forth that the lien is against a homestead. Hence, the question of whether the court was aware that the property before it was homestead is clear from the record. The next question is: *knowing that the property was homestead, did the court have the power to confer the lien?*

As indicated above, we have determined that *Barnett v. Eureka Paving Co.*, 234 S.W. 1081 (Tex.Comm'n App.1921, opin. apprvd), is a fundamental case on the subject. That case is similar to the case before us and we are compelled to follow it. Because of the importance of *Barnett* to our decision, we present the following detailed summary of the facts therein.

In *Barnett*, the original or former lawsuit occurred in 1917 and was brought by the City of Houston. The question before the Commission of Appeals of Texas was whether the judgment rendered in the former lawsuit foreclosing a paving lien was authorized by the constitution. In the original lawsuit, no answer was filed and a default judgment was issued. *It was a final, non-appealable judgment.* Based upon the lien granted in that final judgment, an order of sale was issued. A second lawsuit was filed "praying for an injunction and also to have set aside, cancelled and annulled the former judgment on

the ground that the property was a homestead, and ... [that] the court had no jurisdiction to render any judgment in the case at all." 234 S.W. at 1082. In dealing with the identical situation we have before us, "[t]he trial court set aside and annulled the former judgment so far as it established and foreclosed a lien upon the property, and removed the cloud cast upon the title to the property by reason of said judgment...." 234 S.W. at 1082. That second lawsuit was appealed to the 9th district of the court of civil appeals, as the present case has been appealed to this court. The 9th district reversed and rendered the judgment of the court below.

The case was reviewed by the Commission of Appeals of Texas, which observed that the lien was levied on a homestead. The Commission clearly established that in the former lawsuit, the trial court knew it had a homestead before it. The Commission examined the petition in the first lawsuit (as we have done in our case), and stated: "The language of the petition makes it too plain for argument that the Plaintiff ... knew the property was . homestead...." 234 S.W. at 1082. The Commission went on to say: "It is but juggling with words to say that it did not appear in the original suit that foreclosure of a lien was sought against the homestead." 234 S.W. at 1082. In commenting on the reversal by the court of civil appeals, the Commission stated:

> The Court of Civil Appeals seems to have laid much stress on the fact that the defense of homestead was not set up in [the former cause]. As has been shown, no answer was filed and no defense of any kind was set up, but the plaintiff's [City of Houston's] own pleading in that case made a defense for the defendant in that, as has been said, it knew the property was a homestead....

234 S.W. at 1082. The commission went on: "In so far as it was sought to enforce a lien against the homestead, no defense was needed, except the absolutely prohibitive provision of the Constitution." 234 S.W. at 1082. The Commission noted the fact that the homestead character of the property

was undisputed "and hence, regardless of any defense, the decree entered in [the former lawsuit] was a nullity, and it is not necessary to discuss the question of res adjudicata, on which the Court of Civil Appeals based its holding." 234 S.W. at 1082.

The Commission, in holding that the mandatory provision of the constitution, concerning the protection of the homestead, removes such property from the jurisdiction of the court, stated: "The general rule is well established that a judgment rendered by a court even of general jurisdiction is void, if it had, at the time of the rendition of the judgment, no jurisdiction of the ... subject matter." 234 S.W. at 1083.

In reviewing the law of this state on the subjects of collateral attack, homestead, conferred jurisdiction of the district court and provisions mandated by the constitution, since *Barnett,* we find that the constitutional provision against forced sales of homesteads is of a mandatory character and it has been held with considerable unanimity that forced sales of property constituting a homestead are void and subject to collateral attack, even when the homestead character of the property is not affirmatively disclosed by the record. A judgment ordering a sale is vulnerable to collateral impeachment on the theory that the property was a homestead not only when this fact is revealed by the record but also when the record is silent on the issue. It further appears that the former judgment can stand only when the record discloses that the issue of whether homestead exists has been determined adversely to the one claiming the homestead exemption, in which case the judgment cannot be collaterally attacked. *Cline v. Niblo,* 117 Tex. 474, 8 S.W.2d 633, 636 (1928). *See* 34 TEX. JUR.2d Judgments § 314 (1962).

In following the subsequent history of *Barnett,* we find it is consistently followed. The latest of those cases is *Sibert v. Devlin,* 508 S.W.2d 658, 662 (Tex.Civ.App.— Texarkana 1974, no writ), which holds, "if the district court was without the jurisdictional power to render the judgment ...,

that judgment was and is void and it may be set aside ... (citing *Barnett*)." *Poynor v. Bowie Independent School District*, 627 S.W.2d 517, 519 (Tex.App.—Fort Worth 1982, writ dism'd), holds that "[a] void judgment is not res judicata in a subsequent suit involving the same parties and subject matter." *Continental Casualty Company v. Street*, 364 S.W.2d 184, 186 (Tex.1963), holds that *"the appellate court has jurisdiction to declare the invalidity of a void judgment."* (Emphasis added.)

We conclude, therefore, that the trial court in the first lawsuit lacked jurisdiction over the subject matter because of the mandatory provision of the constitution in protecting the homestead from the imposition of any lien except as permitted by the constitution.

Therefore, we hold that the equitable lien imposed in the first lawsuit against the wife's undivided one-half interest in the previously acquired Glover family homestead may not be enforced because of the protection afforded the homestead by TEX. CONST. art. 16, § 50 (Vernon 1955). The judgment of the trial court denying foreclosure is affirmed. All costs of this appeal are assessed against appellants.

GUITTARD, C.J., and STEPHENS, VANCE, ALLEN, WHITHAM, MALONEY, HOWELL, McCLUNG and ZIMMERMANN, JJ., join in the majority opinion.

SPARLING, J., concurring.

AKIN, J., dissenting.

GUILLOT, J., joins in the dissenting opinion.

SPARLING, Justice, concurring.

I concur in holding that Article 16, section 50 of the Texas Constitution protects the Glover's from a "forced sale" of their homestead. I disagree, however, that the equitable lien created by the first lawsuit is subject to collateral attack. Instead, I follow the dissent's rationale that the constitutional homestead right was waived in the first lawsuit by the Glovers' failure to assert the defense or appeal the judgment.

Therefore, I would hold that while Sharp's lien is valid, Sharp may not foreclose on it as long as the property remains the Glovers' homestead. In my view, this case is analogous to the line of cases involving homestead transactions by one spouse, in which Texas courts have adhered strictly to the principle that one-spouse homestead transactions are not void, but *merely inoperative* while the property remains the non-participating spouse's homestead. *See Villarreal v. Laredo National Bank*, 677 S.W.2d 600, 609 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.) and cases cited therein. In *Villarreal*, a husband and wife executed a note for improvements placing a builder's and mechanic's lien on their homestead. The couple later divorced and the trial court awarded ownership of the homestead to the husband but set the property aside to the wife for the use and benefit of the couple's minor children until the youngest child reached eighteen. While the wife and children occupied the homestead the note became due and the husband, without his former wife's knowledge or consent, renewed the debt by executing a new real estate lien note on the homestead. When the new note matured, the husband could not pay it and the bank sought to foreclose on the homestead, which was still occupied by the wife and children. The court stated that although the bank had a right to foreclose on the husband's interest in the property, the bank could not exercise its right and foreclose while the wife occupied the property as her homestead. 677 S.W.2d at 608.

In sum, I would hold that Sharp has a lien which may be executed only upon dissolution of the homestead. This solution more nearly comports with my view of the purpose of the Texas homestead law, gives some relief to the victim of the theft, and incidentally, serves to protect the innocent husband's quiet enjoyment of his undivided half-interest in the property. Accordingly, I would affirm the judgment of the trial court.

AKIN, Justice, dissenting.

I cannot agree that the equitable lien held by Sharp is void; rather, I would hold that the lien is both valid and enforceable and would, accordingly, reverse the judgment of the trial court and render judgment for Sharp. Consequently, I must dissent.

## VALIDITY OF THE LIEN

Article 16, Section 50 of the Texas Constitution provides:

> The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, *or for work and material used in constructing improvements thereon,* and in this last case only when the work and material are contracted for in writing, and with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition or defeasance shall be void. This amendment shall become effective upon its adoption. [emphasis added]

Because Sharp's equitable lien was for *improvements* to the Glover's homestead, the lien is valid. I recognize that the improvements to the Glovers' homestead were not "contracted for in writing" as provided in Section 50 but conclude that such formalities are not required where the improvements are constructed with stolen funds. If the Glovers had borrowed the money for the improvements from Sharp, Sharp would have been able to obtain a valid lien on the Glovers' homestead in the amount of the loan in accordance with the provisions of Section 50. Why, then, should the validity of Sharp's equitable lien be questioned, and the Glovers protected, simply because the funds used to make the improvements were *stolen* rather than borrowed from Sharp? In my view, Section 50 was not intended by the framers of the constitution to protect a thief who steals funds and then uses those funds to improve his already-existing homestead. To hold to the contrary is to encourage wrongdoing. It is axiomatic that constitutional and statutory provisions will not be construed so as to ascribe to the drafters an intention to do an unjust, unreasonable, or absurd thing. *See McKinney v. Blankenship,* 154 Tex. 632, 282 S.W.2d 691, 698 (1955); *Anderson v. Penix,* 138 Tex. 596, 161 S.W.2d 455, 458 (1942). The homestead laws of the State of Texas were never intended to be the haven of wrongfully obtained money or properties. *Baucum v. Texam Oil Corp.,* 423 S.W.2d 434, 442 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r.e.).

The case so heavily relied upon by the majority, *Barnett v. Eureka Paving Co.,* 234 S.W. 1081 (Tex.Comm'n App.1921, holding approved), is clearly distinguishable from the case at bar and, therefore, is not controlling. *Barnett* concerned a lien placed upon a homestead to secure the costs of paving the street running in front of the homestead. The *Barnett* court concluded that such a lien was void simply because the supreme court had previously held that such a lien did *not* fall within one of the three categories of liens which the Constitution provides may be foreclosed upon a homestead. *See Higgins v. Bordages,* 88 Tex. 458, 31 S.W. 52 (1895). Those three categories are liens for purchase money or a part thereof, for taxes, and for improvements. TEX.CONST. art. 16, § 50. Sharp's lien, of course, arises out of *improvements* made to the Glovers' home-

stead and thus *is* one of the three types of liens that the constitution provides may be placed, and foreclosed, upon a homestead. Accordingly, *Barnett* is of little relevance to the case before us.

Furthermore, I would hold that the Glovers waived their possible homestead defense by failing to appeal the judgment in the first suit, which created the equitable lien. It is well-settled that a person by his act or omission may waive even a constitutional right. *Michel v. State of Louisiana,* 350 U.S. 91, 99, 76 S.Ct. 158, 163, 100 L.Ed. 83 (1955); *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944); *Hernandez v. Houston Independent School District,* 558 S.W.2d 121, 125 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.); *Young v. City of Colorado,* 174 S.W. 986, 994 (Tex.Civ.App.—Fort Worth 1915, writ ref'd). A homestead right is an affirmative defense, *Bennett v. State National Bank, Odessa, Texas,* 623 S.W.2d 719 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), which may be waived by the party entitled to assert it. *Benson v. Mangum,* 117 S.W.2d 169 (Tex. Civ.App.—San Antonio 1938, writ ref'd). The Glovers failed to appeal the judgment in the first suit, which created the equitable lien, and so have waived any applicable affirmative defense to the creation of the lien arising out of their homestead interest. To hold otherwise is to unnecessarily undermine the valued concept of finality of judgments.

In this respect, I cannot agree with the majority's statement that a judgment ordering a forced sale is "vulnerable to collateral impeachment on the theory that the property was a homestead not only when this fact is revealed by the record but also when the record is silent on the issue." Imagine, for example, a defendant who has a colorable homestead defense but is apprehensive about advancing it at trial for fear the issue will be decided against him. The rule pronounced by the majority has the absurd effect of allowing this defendant to sit silently by while a court places a lien upon his property and to later, sometime in the future when the lien is about to be foreclosed, assert his homestead defense for the first time in order to have the earlier judgment declared "void." Such practice is contrary to the concepts of both judicial economy and finality of judgments. For the majority to encourage litigants to "lay behind the log" in such a manner is irresponsible, inexcusable, and untenable.

## ENFORCEABILITY OF THE LIEN

I turn now to the question of whether Sharp may foreclose upon his equitable lien. The Glovers argue that Sharp may not force sale of their homestead in order to satisfy the lien because the lien is against only Jo Ann Glover's interest in the homestead. The Glovers assert, in effect, that their homestead should be protected from forced sale because of David Glover's interest therein. I disagree and would hold that Sharp may foreclose upon his lien.

This position is supported by two cases cited by Sharp. In *Smith v. Green,* 243 S.W. 1006 (Tex.Civ.App.—Amarillo 1922, writ ref'd), Smith and Green were engaged in a partnership. Without Green's knowledge or consent, Smith used partnership funds to erect a residence upon his lot. Smith and his wife occupied the property as their homestead until they sold it, receiving in exchange another house and lot as well as $11,500 cash. Green sued to recover the partnership funds from the proceeds of the sale of the Smiths' homestead. The trial court allowed Green to recover the misapplied partnership funds by imposing a constructive trust upon the cash proceeds of the sale of the Smiths' homestead. On appeal, the question presented for the court's decision was "whether the homestead character of the property would prevent a court of equity from declaring a trust thereon." *Smith v. Green,* 243 S.W. at 1007. The court, relying on the constructive trust doctrine, answered this question in the negative. Smith held the property purchased with the misapplied partnership funds in trust for Green, its real owner; thus, in equity there was no real ownership of the property by Smith.

Accordingly, the court held that the constitution did not prohibit the establishment of a constructive trust against the homestead under the facts of the case.

Although the issue was not squarely before it, the Amarillo court indicated that, had the Smiths been occupying their homestead at the time of suit, the fact that Smith's wife was innocent of any wrongdoing would not have protected the homestead from forced sale. The court reasoned that the innocent wife would not be in any better position than her wrongdoing husband because "[s]he, as well as he, profited by the investment of the trust funds to the benefit of their homestead without paying any consideration for such benefit." *Smith v. Green,* 243 S.W. at 1008.

This rationale is equally applicable to the facts of the case at bar. The embezzled funds which were used to construct the improvements to the Glovers' homestead were held in constructive trust by Jo Ann Glover for their real owner, Sharp. Sharp obtained a valid lien on the Glovers' homestead in the amount of the embezzled funds. David Glover (the innocent spouse), as well as Jo Ann Glover (the wrongdoing spouse), benefited from the improvements to their homestead without paying any consideration for those improvements. Accordingly, David Glover's assertion of his homestead right should not protect the Glovers' homestead from forced sale in order to satisfy Sharp's equitable lien.

*First State Bank of Ellinger v. Zelesky,* 262 S.W. 190 (Tex.Civ.App.—Galveston 1924, no writ), also supports my position. In that case Joe Zelesky embezzled funds from his employer, the appellant bank, and used those funds to purchase property which he subsequently declared to be his homestead. Jennie Zelesky was without knowledge or fault with respect to her husband's wrongdoing. The Galveston court held that the constructive trust doctrine was applicable "to its fullest extent." *Zelesky,* 262 S.W. at 192. The court, citing

*Smith v. Green,* stated that "[a] wife can never acquire homestead rights in property held in trust by her husband which defeat or impair the rights of the beneficiary of the trust." *Id.* In our case, to hold that Sharp cannot force sale of the Glovers' homestead because of David Glover's homestead interest is to impair the rights of Sharp, the real owner of the improvements to the Glovers' homestead which were constructed with funds stolen from Sharp. This I would decline to do.

I recognize, of course, that in *Zelesky* the stolen funds were used to purchase a homestead, while in the case at bar the stolen funds were used to improve an already-existing homestead. Unlike the majority, however, I perceive no rational distinction between a situation where a thief steals funds which he uses to purchase a homestead and a situation, such as that here, where a thief steals funds which he uses to improve property that had previously been declared homestead. Countenancing such a distinction can only lead to unjust, inequitable, and absurd results. The majority's holding allows, for example, a victim to enforce foreclosure upon a modest house which was purchased with funds stolen from the victim and *then* declared by the thief to be his homestead, while foreclosure is unavailable to the victim of a thief who steals a large sum of money which he uses to transform his *already-existing* homestead from a veritable shanty into a palatial residence. Such a result is untenable.

Accordingly, I would hold that Sharp has a valid equitable lien against Jo Ann Glover's undivided one-half interest in the Glovers' homestead in the amount of $5,004.31 and that Sharp may foreclose upon that lien.[1]

*Villarreal v. Laredo National Bank,* 677 S.W.2d 600 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.), relied upon by Justice Sparling, does not control our case. A careful reading of *Villarreal* reveals that

---

**1.** Sharp has, of course, no interest in David Glover's undivided one-half interest in the Glo-

vers' homestead.

the creditor's failure to give proper notice to the wife was a major factor in the court's decision:

> *In the absence of compliance by* [creditor] *with foreclosure requirements* [the wife's] estate will survive judicial foreclosure of [the husband's] interest and sale of the property and the new fee title owner will take the property burdened by [the wife's] homestead rights for the balance of the estate created in the decree of divorce.

*Villarreal,* 677 S.W.2d at 608–09 (emphasis added). Thus, the exact rationale underlying the San Antonio court's decision is unclear. In view of this, I think it preferable to ground our decision in the two cases which I have discussed, *Smith v. Green* and *Zelesky.*

GUILLOT, J., joins in this dissent.